UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

KATHY K. GIBBS,

                    Plaintiff,

    v.

MICHAEL J. ASTRUE, Commissioner of
Social Security,

                    Defendant.

Case No. C09-5114RJB-KLS

REPORT AND RECOMMENDATION

Noted for April 9, 2010

Plaintiff, Kathy K. Gibbs, has brought this matter for judicial review of the denial of her applications for disability insurance and supplemental security income ("SSI") benefits. This matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule MJR 4(a)(4) and as authorized by Mathews, Secretary of H.E.W. v. Weber, 423 U.S. 261 (1976). After reviewing the parties' briefs and the remaining record, the undersigned submits the following Report and Recommendation for the Court's review.

FACTUAL AND PROCEDURAL HISTORY

Plaintiff currently is 37 years old.[1] Tr. 28. She has a general equivalency diploma and past relevant work experience as an optometric assistant. Tr. 25, 116, 125, 268, 286.

On April 28, 2004, plaintiff filed applications for disability insurance and SSI benefits, alleging disability as of December 1, 2000, due to anxiety, chronic fatigue, depression, migraine

---

[1] Plaintiff's date of birth has been redacted in accordance with the General Order of the Court regarding Public Access to Electronic Case Files, pursuant to the official policy on privacy adopted by the Judicial Conference of the United States.

REPORT AND RECOMMENDATION - 1

headers, a nervous stomach, and a sweating problem. Tr. 16, 28, 61, 124-25. Her applications were denied initially and on reconsideration. Tr. 16, 28-30, 50, 53. A hearing was held before an administrative law judge ("ALJ") on October 30, 2007, at which plaintiff, represented by counsel, appeared and testified, as did a vocational expert. Tr. 265-89.

On January 24, 2008, the ALJ issued a decision, determining plaintiff to be not disabled, finding specifically in relevant part:

(1) at step one of the sequential disability evaluation process,[2] plaintiff had not engaged in substantial gainful activity since her alleged onset date of disability;

(2) at step two, plaintiff had "severe" impairments consisting of an anxiety disorder and a depressive disorder;

(3) at step three, none of plaintiff's impairments met or medically equaled the criteria of any of those listed in 20 C.F.R. Part 404, Subpart P, Appendix 1;

(4) after step three but before step four, plaintiff had the residual functional capacity ("RFC") to perform a full range of work at all exertional levels, with certain other non-exertional limitations;

(5) at step four, plaintiff was unable to perform her past relevant work; and

(6) at step five, plaintiff was capable of performing other jobs existing in significant numbers in the national economy.

Tr. 16-27. Plaintiff's request for review was denied by the Appeals Council on January 9, 2009, making the ALJ's decision the Commissioner's final decision. Tr. 3; 20 C.F.R. § 404.981, § 416.1481.

On March 4, 2009, plaintiff filed a complaint in this Court seeking review of the ALJ's decision. (Dkt. #1-#3). The administrative record was filed with the Court on June 10, 2009.

---

[2] The Commissioner employs a five-step "sequential evaluation process" to determine whether a claimant is disabled. See 20 C.F.R. § 404.1520; 20 C.F.R. § 416.920. If the claimant is found disabled or not disabled at any particular step, the disability determination is made at that step, and the sequential evaluation process ends. Id.

(Dkt. #14). Plaintiff argues the ALJ's decision should be reversed and remanded to the Commissioner for an award of benefits for the following reasons:

(a)     the ALJ erred in evaluating the medical evidence in the record;

(b)     the ALJ erred in assessing plaintiff's credibility;

(c)     the ALJ erred in evaluating the lay witness evidence in the record;

(d)     the ALJ erred in assessing plaintiff's residual functional capacity; and

(e)     the ALJ erred in finding plaintiff capable of performing other work existing in significant numbers in the national economy.

The undersigned agrees the ALJ erred in determining plaintiff to be not disabled, but, for the reasons set forth below, recommends that while the ALJ's decision should be reversed, this matter should be remanded to the Commissioner for further administrative proceedings. In addition, although plaintiff requests oral argument in this matter, the undersigned finds such argument to be unnecessary.

<u>DISCUSSION</u>

This Court must uphold the Commissioner's determination that plaintiff is not disabled if the Commissioner applied the proper legal standard and there is substantial evidence in the record as a whole to support the decision. <u>Hoffman v. Heckler</u>, 785 F.2d 1423, 1425 (9th Cir. 1986). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971); <u>Fife v. Heckler</u>, 767 F.2d 1427, 1429 (9th Cir. 1985). It is more than a scintilla but less than a preponderance. <u>Sorenson v. Weinberger</u>, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975); <u>Carr v. Sullivan</u>, 772 F. Supp. 522, 524-25 (E.D. Wash. 1991). If the evidence admits of more than one rational interpretation, the Court must uphold the Commissioner's decision. <u>Allen v. Heckler</u>, 749 F.2d 577, 579 (9th Cir. 1984).

REPORT AND RECOMMENDATION - 3

I.      The ALJ's Evaluation of the Medical Evidence in the Record

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998).  Where the medical evidence in the record is not conclusive, "questions of credibility and resolution of conflicts" are solely the functions of the ALJ. Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982).  In such cases, "the ALJ's conclusion must be upheld." Morgan v. Commissioner of the Social Security Administration, 169 F.3d 595, 601 (9th Cir. 1999).  Determining whether inconsistencies in the medical evidence "are material (or are in fact inconsistencies at all) and whether certain factors are relevant to discount" the opinions of medical experts "falls within this responsibility." Id. at 603.

In resolving questions of credibility and conflicts in the evidence, an ALJ's findings "must be supported by specific, cogent reasons." Reddick, 157 F.3d at 725.  The ALJ can do this "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Id.  The ALJ also may draw inferences "logically flowing from the evidence." Sample, 694 F.2d at 642.  Further, the Court itself may draw "specific and legitimate inferences from the ALJ's opinion." Magallanes v. Bowen, 881 F.2d 747, 755, (9th Cir. 1989).

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996).  Even when a treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." Id. at 830-31.  However, the ALJ "need not discuss all evidence presented" to him or her. Vincent on Behalf of Vincent v. Heckler, 739 F.3d 1393, 1394-95 (9th Cir. 1984) (citation

omitted) (emphasis in original).  The ALJ must only explain why "significant probative evidence has been rejected." Id.; see also Cotter v. Harris, 642 F.2d 700, 706-07 (3rd Cir. 1981); Garfield v. Schweiker, 732 F.2d 605, 610 (7th Cir. 1984).

In general, more weight is given to a treating physician's opinion than to the opinions of those who do not treat the claimant. Lester, 81 F.3d at 830.  On the other hand, an ALJ need not accept the opinion of a treating physician, "if that opinion is brief, conclusory, and inadequately supported by clinical findings" or "by the record as a whole." Batson v. Commissioner of Social Security Administration, 359 F.3d 1190, 1195 (9th Cir. 2004); Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002); Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001).  An examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining physician." Lester, 81 F.3d at 830-31.  A non-examining physician's opinion may constitute substantial evidence if "it is consistent with other independent evidence in the record." Id. at 830-31; Tonapetyan, 242 F.3d at 1149.

A.     Dr. Cosgrove

In early December 2004, plaintiff was evaluated by Lisa Cosgrove, D.O., who diagnosed plaintiff with moderate chronic, recurrent major depression without psychosis, a dysthymic disorder, an anxiety disorder not otherwise specified ("NOS"), and a global assessment of functioning ("GAF") score of 40.[3] Tr. 191.  In terms of plaintiff's prognosis, Dr. Cosgrove opined as follows:

---

[3] A GAF score is "a subjective determination based on a scale of 100 to 1 of 'the clinician's judgment of the individual's overall level of functioning.'" Pisciotta v. Astrue, 500 F.3d 1074, 1076 n.1 (10th Cir. 2007).  "A GAF score of 31-40 is extremely low, and 'indicates . . . major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood.'" Salazar v. Barnhart, 468 F.3d 615, 624 n.4 (10th Cir. 2006) (quoting DSM-IV-TR at 32); see also Cox v. Astrue, 495 F.3d 614, 620 n.5 (8th Cir. 2007) ("[A] GAF score in the forties may be associated with a serious impairment in occupational functioning.").

. . . Guarded providing the following. The claimant, at the end of the interview expressed motivation to return to medication management and psychotherapy. She appeared to express motivation to improve her condition.

With return to psychiatric treatment to include medication management and psychotherapy improvement is likely to be seen in her depressive symptoms within the next six months to a year. Also recommended would be a referral to the [Washington State] Department of Vocational Rehabilitation to more fully assess and assist this claimant in coping with a competitive work environment.

<u>Id.</u> With respect to plaintiff's ability to function, Dr. Cosgrove also opined that:

. . . The claimant shows no impairment in cognition or judgment that would preclude her from managing her funds independently should she be given funding.

. . . At this time because of [sic] the claimant's neurovegetative symptoms of depression and anxiety are untreated and very evident, it is likely that she would have considerable difficulty even getting to work due to her anergia. She would have difficulty, again due to anergia even managing simple and repetitive tasks. Her ability to relate to the public, coworkers, and supervisors also appears impaired due to her marked social withdrawal and isolation.

I do not see her as employable at this time, however, with the previous recommendations, improvement in this might be seen within the next year.

Tr. 191-92.

After summarizing the above findings, the ALJ stated he was giving "[g]reat weight" to Dr. Cosgrove's "assessment" that while plaintiff's "prognosis was considered guarded, she expressed motivation to return to medication management and psychotherapy," and that "[w]ith such treatment, improvement was expected within the next six months to a year," since it was "generally consistent with the collective evidence of record." Tr. 24. Plaintiff argues the ALJ erred here by ignoring or overlooking the assessed GAF score of 40, and because she was unable to secure appropriate treatment and did not improve significantly. Defendant disagrees, arguing the substantial evidence in the record shows such improvement did occur.

REPORT AND RECOMMENDATION - 6

The undersigned agrees with plaintiff that the ALJ erred in evaluating Dr. Cosgrove's findings, but disagrees that those findings clearly support a determination of disability. As defendant points out, the record does show plaintiff experienced improvement on medication – and on more than one occasion significant improvement (see Tr. 255 (plaintiff reporting Clonazapam made her feel "awesome"); see also Tr. 232 (plaintiff stating her anxiety symptoms were "well controlled" in past), Tr. 236 (plaintiff reporting she noticed significant difference after dose of Celexa was increased); 239 (plaintiff stating her anxiety symptoms were well-controlled on Clonazapam) – but not necessarily within the six-month to one year period noted by Dr. Cosgrove. For example, although Dr. Cosgrove issued his evaluation report in early December 2004, it is not until late June 2006, that plaintiff first mentioned experiencing such improvement. Tr. 255. Accordingly, it is not at all clear that the significant improvement noted in the record occurred during that period.

On the other hand, while plaintiff's reports subsequent to late June 2006, are somewhat mixed concerning the amount of improvement she experienced (see Tr. 232, 236, 239), at least one progress note reveals, as noted above, that in late January 2007, she reported "her anxiety symptoms were well controlled in the past" (Tr. 232). Although no mention is made as to exactly what period of time the phrase "in the past" actually is being referred to here, it certainly could include the six months to one year period Dr. Cosgrove discussed in his evaluation report. As such, it is entirely possible that significant improvement did occur during that period, which would then form a proper reason for the ALJ to base his rejection of Dr. Cosgrove's findings and opinions in regard to plaintiff's ability to work.

As for plaintiff's argument regarding the GAF score of 40 assessed by Dr. Cosgrove, the undersigned finds the ALJ erred here as well. As noted above, a GAF score of 40 "is extremely

low," indicating "'major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood.'" Salazar, 468 F.3d at 624 n.4 (quoting DSM-IV-TR at 32). A GAF score is "relevant evidence" of a claimant's ability to function mentally. England v. Astrue, 490 F.3d 1017, 1023, n.8 (8th Cir. 2007). As such, it constitutes significant probative evidence the ALJ should have addressed in analyzing Dr. Cosgrove's evaluation report.

Nevertheless, even though a GAF score may be "of considerable help" to the ALJ in, for example, assessing a claimant's RFC, "it is not essential" to the accuracy thereof. Howard v. Commissioner of Social Security, 276 F.3d 235, 241 (6th Cir. 2002). Thus, an ALJ's "failure to reference the GAF score," would not "standing alone" result in a residual functional capacity assessment being inaccurate. Id. That is, the mere fact that a low GAF score may have been assessed is not in itself sufficient to establish disability. Accordingly, while the ALJ erred here, he was not necessarily required to adopt the GAF score of 40, let alone find that plaintiff was disabled based on that score.

B.     Dr. Crist

Plaintiff also was examined by Robert Crist, M.D., in early December 2004, at which time she was diagnosed with chronic anxiety and depression with panic disorder and agoraphobia, a panic disorder secondary thereto, chronic fatigue syndrome also secondary to the two previous diagnoses, and chronic muscle contraction headaches. Tr. 184. Dr. Crist also provided the following functional assessment:

> . . . It is my belief that the claimant could ambulate and stand 6-8 hours . . .
>
> She could be expected to sit six or eight hours without restrictions.
>
> Assistive devices are not necessary.
>
> The claimant can lift and carry, I think, 10-20 pounds frequently without difficulty. If she is limited it would only be due to fatigue and deconditioning.

I believe she would not have any specific postural limitations on bending, stooping, or crouching.

No manipulative limitations would be expected. It would appear that she has no restrictions on reaching, handling, feeling, grasping, or fingering.

Environmental limitations would be secondary to her underlying panic disorder and depression and the accompanying chronic fatigue that she experiences. Because she feels so agoraphobic, she is hesitant to get outside of her home. This is an exceedingly limiting factor.

Tr. 184-85.

The ALJ stated he was giving "[g]reat weight" to "the opinion of Dr. Crist with respect to" plaintiff's " physical residual functional capacity," as it was "based on actual observation of" plaintiff. Tr. 24. However, the ALJ stated he was giving only "limited weight" to Dr. Crist's assessment of plaintiff's "mental health status and its affect on her ability to engage in work activity," as it was "outside his area of expertise." Id. Plaintiff argues the ALJ erred in rejecting Dr. Crist's assessment of her mental health status, because, as a medical doctor, he was competent to provide an opinion with respect to both his physical and mental condition. The undersigned agrees.

It is true, as defendant points out, that an ALJ may give more deference to the "opinion of a specialist about medical issues related to his or her area of specialty" than to that of a medical source who is not specialist. Benecke v. Barnhart, 379 F.3d 587, 594 n.4 (9th Cir. 2004) (citing 20 C.F.R. § 404.1527(d)(5)). An ALJ, however, may not give less deference to an examining physician merely because he or she is not a specialist. That is, although defendant contends that the ALJ gave more weight to the opinions of the psychiatrists or psychologists in the record, the ALJ did not state he was discounting Dr. Crist's assessment on the basis of their specialization in the area of mental health. In addition, even if such a finding can be implied from the language of

the ALJ's decision, as discussed elsewhere herein the ALJ also erred in evaluating the opinions

of those medical sources in the record who had mental health expertise.

C.    Dr. Kuhner and Dr. Houck

A psychiatric review technique form was completed by Ben Kuhner, M.D., in early

February 2005, and affirmed by Trevelyan Houck, Ph.D., in late April 2005, in which plaintiff

was diagnosed with major depression and an anxiety disorder, NOS. Tr. 200, 202.  In addition,

Drs. Kuhner and Houck found plaintiff had moderate restrictions in her activities of daily living,

moderate difficulties in maintaining social functioning, moderate difficulties in maintaining

concentration, persistence or pace, and no episodes of decompensation of extended duration. Tr.

207.  Also completed by Dr. Kuhner in early February 2005, and affirmed by Dr. Houck in late

April 2005, was a mental residual functional capacity assessment form, in which plaintiff more

specifically was found to be moderately limited in her ability to:

- remember locations and work-like procedures;
- understand, remember and carry out detailed instructions;
- maintain attention and concentration for extended periods;
- perform activities within a schedule;
- maintain regular attendance;
- be punctual within customary tolerances;
- complete a normal workday and workweek without interruptions from psychologically based symptoms;
- perform at a consistent pace without an unreasonable number and length of rest periods;
- interact appropriately with the general public;
- respond appropriately to changes in the work setting;
- travel in unfamiliar places or use public transportation; and
- set realistic goals or make plans independently of others.

Tr. 193-94.  In the narrative portion of that form, Drs. Kuhner and Houck further found plaintiff

still retained "the cognitive ability to do SRT [simple routine and/or repetitive tasks]" and "some

detailed tasks." Tr. 196.  They opined as well that plaintiff should not work with the public,

REPORT AND RECOMMENDATION - 10

could "avoid normal hazards," had "poor motivation," and would not "set long range goals on a regular basis." Id.

The ALJ stated in his decision that he was affording the opinions of Dr. Kuhner and Dr. Houck "great weight," as they "made determinations consistent with the evidence presented." Tr. 25. Plaintiff argues the ALJ erred by not giving any reasons for failing to adopt many of the mental functional limitations Drs. Kuhner and Houck found, even though he had afforded their opinions great weight. Once more, the undersigned agrees. The ALJ assessed plaintiff with the following mental residual functional capacity:

> **. . . the claimant's ability to interact and get along with the general public is limited to brief and superficial contact. Her ability to respond appropriately to changes in the work setting is moderately limited. Her ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods is moderately limited.**

Tr. 20 (emphasis in original). Clearly, this assessment fails to adequately account for a number of the moderate limitations Dr. Kuhner and Dr. Houck found.

Defendant argues the ALJ did not err here, asserting it is the statements contained in the narrative portion of the mental residual functional capacity assessment form that the ALJ's own mental residual functional capacity assessment should be compared to, and not the more specific limitations listed above. But defendant provides no legal basis for why this should be so, or why the statements contained in the narrative section are more credible or reliable. Nor, to the extent he did rely on those statements, did the ALJ explain why he did so. The undersigned, therefore, finds the ALJ erred in evaluating this medical evidence.

II.     The ALJ's Assessment of Plaintiff's Credibility

Questions of credibility are solely within the control of the ALJ. Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982). The Court should not "second-guess" this credibility determination. Allen, 749 F.2d at 580. In addition, the Court may not reverse a credibility determination where that determination is based on contradictory or ambiguous evidence. Id. at 579. That some of the reasons for discrediting a claimant's testimony should properly be discounted does not render the ALJ's determination invalid, as long as that determination is supported by substantial evidence. Tonapetyan v. Halter, 242 F.3d 1144, 1148 (9th Cir. 2001).

To reject a claimant's subjective complaints, the ALJ must provide "specific, cogent reasons for the disbelief." Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1996) (citation omitted). The ALJ "must identify what testimony is not credible and what evidence undermines the claimant's complaints." Id.; Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993). Unless affirmative evidence shows the claimant is malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing." Lester, 81 F.2d at 834. The evidence as a whole must support a finding of malingering. O'Donnell v. Barnhart, 318 F.3d 811, 818 (8th Cir. 2003).

In determining a claimant's credibility, the ALJ may consider "ordinary techniques of credibility evaluation," such as reputation for lying, prior inconsistent statements concerning symptoms, and other testimony that "appears less than candid." Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996). The ALJ also may consider a claimant's work record and observations of physicians and other third parties regarding the nature, onset, duration, and frequency of symptoms. Id.

Plaintiff argues the ALJ failed to provide clear and convincing reasons for discounting her credibility. The undersigned disagrees. For example, the ALJ noted:

> . . . Although she complained of an inability to remain focused, the claimant was able to respond appropriately to questions posed during the hearing. She did not ask to have questions repeated and she did not require redirection. . . .

Tr. 22. An ALJ may rely on a claimant's demeanor at the hearing as a basis for discrediting his or her testimony. Thomas v. Barnhart, 278 F.3d 947, 960 (9th Cir. 2002); Matney v. Sullivan, 981 F.2d 1016, 1020 (9th Cir. 1992). Inclusion of personal observations of the claimant in the ALJ's findings thus "does not render the decision improper." Nyman v. Heckler, 779 F.2d 528, 531 (9th Cir. 1986). However, the ALJ may not reject a claimant's subjective complaints "solely on the basis of" personal observations. SSR 95-5p, 1995 WL 670415 *2. As discussed below, the ALJ provided other valid reasons for discounting plaintiff's credibility.

An ALJ may discount a claimant's credibility on the basis of medical improvement. See Morgan v. Commissioner of Social Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999); Tidwell v. Apfel, 161 F.3d 599, 601 (9th Cir. 1998). In this case, the ALJ noted plaintiff reported she was "much improved" on medication in early October 2002. Tr. 23, 153. The record contains other documentation of reported medical improvement as well, despite also containing reports of plaintiff having experienced side effects on some medications. See Tr. 145, 152, 154, 181, 219, 232, 236, 239, 255.

Failure to assert a good reason for not seeking or following a prescribed course of treatment, or a finding by the ALJ that a proffered reason for failing to do so is not believable, also "can cast doubt on the sincerity of the claimant's pain testimony." Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989). Here, the ALJ noted that while plaintiff had been "advised to continue with the use of Celexa" in early October 2002 – which, as noted above, caused her to be "much

improved" in terms of her anxiety – she reported in late January 2003, "having tapered herself off of" it. Tr. 23, 153-54. Indeed, as further evidence of the efficacy of that medication, plaintiff also "described her symptoms as feeling cloudy" and stated that she could feel her "nerves and blood dancing along her arms and veins" at that time. Tr. 154 (though still reporting she was not having racing heartbeat as she had in past). In addition, the ALJ noted that despite being given a referral for mental health counseling in late January 2003, plaintiff did not seek such counseling until more than a year later in early June 2004, and that by late July 2004, her "case was closed . . . because she failed to make any appointments." Tr. 23, 154, 162-70, 172-73.

Plaintiff argues her failure to maintain mental health treatment was consistent with her mental health condition, noting that the Ninth Circuit has stated that the fact that a claimant does "not seek treatment for a mental disorder until late in the day" is not a proper basis upon which to discount the accuracy of a medical source's assessment thereof. Nguyen v. Chater, 100 F.3d 1462, 1465 (9th Cir. 1996) (noting those with depression often do not recognize their condition reflects potentially serious mental illness) (citing Blankenship v. Bowen, 874 F.2d 1116, 1124 (6th Cir.1989) (holding invalid ALJ's rejection of claimant's assertions concerning depression due to failure to seek psychiatric treatment, finding questionable practice of chastising one with mental impairment for exercise of poor judgment in seeking rehabilitation)). Here, though, the ALJ did not discount any medical source's opinion on this basis, nor is there any evidence in the record that plaintiff's mental condition caused her to not seek treatment.

Plaintiff also faults the ALJ for discounting her credibility in part on her activities of daily living. To determine whether a claimant's symptom testimony is credible, the ALJ may consider his or her daily activities. Smolen, 80 F.3d at 1284. Such testimony may be rejected if the claimant "is able to spend a substantial part of his or her day performing household chores or

REPORT AND RECOMMENDATION - 14

other activities that are transferable to a work setting." Id. at 1284 n.7. The claimant need not be "utterly incapacitated" to be eligible for disability benefits, however, and "many home activities may not be easily transferable to a work environment." Id.

It is not at all clear that the ALJ discounted plaintiff's credibility on this basis. See Tr. 21-22 (summarizing testimony of plaintiff and report of plaintiff's mother regarding plaintiff's daily activities). Even if the ALJ did present this as a reason for discounting plaintiff's credibility, and even if substantial evidence did not support the ALJ in doing so, the fact that one of the reasons for discounting a claimant's credibility may be improper, does not render the ALJ's credibility determination invalid, as long as it is supported by substantial evidence in the record, as it is in this case for the reasons stated herein. Tonapetyan, 242 F.3d at 1148.

The undersigned further notes the ALJ found that although plaintiff "reported that she . . . received treatment through Pacific Walk-In Clinic and St. Peter Family Practice," both facilities, in response to the ALJ's request for clinical records, responded that she "had never been treated" at either facility. Tr. 23. This is yet another valid reason upon which the ALJ based his adverse credibility determination. See Smolen, 80 F.3d at 1284 (ALJ may consider ordinary techniques of credibility evaluation, such as prior inconsistent statements and other testimony that appears less than candid). The fact that plaintiff was never treated at those facilities clearly contradicts her own self-reports that she had received treatment there.

III.    The ALJ's Evaluation of the Lay Witness Evidence in the Record

Lay testimony regarding a claimant's symptoms "is competent evidence that an ALJ must take into account," unless the ALJ "expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001). In rejecting lay testimony, the ALJ need not cite the specific record as long as "arguably

germane reasons" for dismissing the testimony are noted, even though the ALJ does "not clearly link his determination to those reasons," and substantial evidence supports the ALJ's decision. Id. at 512. The ALJ also may "draw inferences logically flowing from the evidence." Sample, 694 F.2d at 642.

The record contains a questionnaire completed by plaintiff's mother, in which she related her observations of plaintiff's symptoms and limitations. See Tr. 99-107. Plaintiff argues that while the ALJ summarized what plaintiff's mother related therein (see Tr. 22), he failed to state what weight, if any, he gave thereto. The undersigned agrees the ALJ erred here. To the extent the ALJ did not adopt the limitations related by plaintiff's mother – and it appears the ALJ did not do so with respect to at least some of those limitations – he was required to provide germane reasons for rejecting them. None, however, were provided.

Defendant argues the Court can and should reasonably infer from the rest of the ALJ's decision that he rejected any such limitations not consistent with his assessment of plaintiff's residual functional capacity. While it does seem apparent, as noted above, that the ALJ rejected some or all of the limitations plaintiff's mother reported as they were not included in the residual functional capacity assessment, the point is the ALJ still must provide germane reasons for doing so. Lastly, defendant asserts that none of plaintiff's mother's statements actually contradict any of the limitations contained in that assessment. But, to name just a few examples, she stated that plaintiff had to re-read written instructions due to issues with concentration, that it was hard for her to follow spoken instructions, and that authority figures made her "very uncomfortable." Tr, 104. None of these were accounted for by the ALJ in his decision.[4]

---

[4] Defendant asserts the ALJ acknowledged plaintiff had moderate limitations in regard to her ability to maintain attention and perform at a consistent pace, but a plain reading of his assessment of her residual functional capacity shows that he only found so with respect to performing at a consistent pace. See Tr. 20.

IV.    The ALJ's Assessment of Plaintiff's Residual Functional Capacity

If a disability determination "cannot be made on the basis of medical factors alone at step three of the evaluation process," the ALJ must identify the claimant's "functional limitations and restrictions" and assess his or her "remaining capacities for work-related activities." SSR 96-8p, 1996 WL 374184 *2.  A claimant's residual functional capacity assessment is used at step four to determine whether he or she can do his or her past relevant work, and at step five to determine whether he or she can do other work. Id.  It thus is what the claimant "can still do despite his or her limitations." Id.

A claimant's RFC is the maximum amount of work the claimant is able to perform based on all of the relevant evidence in the record. Id.  However, a claimant's inability to work must result from his or her "physical or mental impairment(s)." Id.  Thus, the ALJ must consider only those limitations and restrictions "attributable to medically determinable impairments." Id.  In assessing a claimant's residual functional capacity, the ALJ also is required to discuss why the claimant's "symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical or other evidence." Id. at *7.

Here, the ALJ assessed plaintiff with the following residual functional capacity:

**. . . the claimant has the residual functional capacity to perform a full range of work at all exertional levels.  However, the claimant's ability to interact and get along with the general public is limited to brief and superficial contact.  Her ability to respond appropriately to changes in the work setting is moderately limited.  Her ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length  of rest periods is moderately limited.**

Tr. 20.  Plaintiff argues that because the ALJ erred in evaluating the medical and lay witness evidence in the record, and because he erred in assessing her credibility, this RFC assessment is flawed.  The undersigned agrees that given the ALJ's errors in evaluating the medical and lay

REPORT AND RECOMMENDATION - 17

witness evidence in the record, although not in regard to plaintiff's credibility, it cannot be said with any certainty that his assessment of her residual functional capacity was entirely accurate. As such, the ALJ erred here as well.

V.     The ALJ's Step Five Analysis

If a claimant cannot perform his or her past relevant work, at step five of the disability evaluation process the ALJ must show there are a significant number of jobs in the national economy the claimant is able to do. Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999); 20 C.F.R. § 404.1520(d), (e), § 416.920(d), (e).  The ALJ can do this through the testimony of a vocational expert or by reference to the Commissioner's Medical-Vocational Guidelines (the "Grids"). Tackett, 180 F.3d at 1100-1101; Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2000).

An ALJ's findings will be upheld if the weight of the medical evidence supports the hypothetical posed by the ALJ. Martinez v. Heckler, 807 F.2d 771, 774 (9th Cir. 1987); Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir. 1984).  The vocational expert's testimony therefore must be reliable in light of the medical evidence to qualify as substantial evidence. Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988).  Accordingly, the ALJ's description of the claimant's disability "must be accurate, detailed, and supported by the medical record." Embrey, 849 F.2d at 422 (citations omitted).  The ALJ, however, may omit from that description those limitations he or she finds do not exist. Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

At the hearing, the ALJ posed a hypothetical question containing substantially the same limitations as he included in his assessment of plaintiff's residual functional capacity, except that he also added a limitation to "simple, repetitive type work." Tr. 286-87.  In response thereto, the vocational expert ("VE") testified that an individual with those limitations and plaintiff's age,

education and past work history, would be able to perform other jobs. Id. Based on the VE's testimony, the ALJ found plaintiff to be capable of performing other work existing in significant numbers in the national economy. Tr. 26-27.

Plaintiff argues the ALJ erred in so finding, asserting first that the vocational expert did not in fact find her to be able to perform other jobs with the above limitations, but only testified that she could perform such jobs in response to the sole limitation to "simple, repetitive type work." The undersigned, however, finds this argument to be wholly without merit and a clear misreading of the hearing testimony, which reads in relevant part:

> [ALJ] Let me pose you a hypothetical. If somebody had a person born [on plaintiff's birth date], has a GED, prior occupations are the two occupations you mentioned, and add the following limitations. Would be restricted to simple, repetitive type work, and the ability to interact and get along with the general public would be limited to brief and superficial contact, ability to respond appropriately to changes in the work setting is moderately limited, ability to complete a normal work day and work week without interruption from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods is moderately limited. Can such a person be employed in any of her prior relevant work?
>
> [VE] No.
>
> [ALJ] Any other occupations listed in the DOT?
>
> [VE] No.
>
> [ALJ] None within the DOT? No simple repetitive type --
>
> [VE] Simple repetitive, it was the moderate ability that I was a little concerned about. The only other, cleaner would be one, which is a light, simple repetitive, unskilled.
>
> [ALJ] How many such jobs in the national economy?
>
> [VE] About 400,000.
>
> [ALJ] Okay. Any other occupations?

REPORT AND RECOMMENDATION - 19

[VE]    The other one would possibly be light assembler, which is considered unskilled and light, and there's about 26, 000.

Tr. 286-87.  The most logical interpretation of this testimony is not that it shows the vocational expert was responding to two different hypothetical questions posed by the ALJ – i.e., one with all the limitations the ALJ described and a second one containing just the limitation to simple, repetitive type work – but that she merely had modified her response to the original hypothetical question based on further clarification by the ALJ.

Plaintiff further argues she should be found to be disabled at step five of the sequential disability evaluation process, because the vocational expert also testified that when an additional restriction – that the individual "would have difficulty managing even simple repetitive tasks" (Tr. 288) – was added to the ALJ's hypothetical, such an individual would not be able to perform any of the jobs identified.  Actually, in response to that question, the vocational expert testified that the cleaner job could be performed, but that if the individual could not even perform simple, repetitive tasks, he or she would be unable to perform any of them. Tr. 288.  But it is not at all clear such a severe limitation is supported by the substantial evidence in the record, and thus the ALJ was not necessarily required to accept this additional testimony.  Nevertheless, because, as discussed above, the ALJ did err in evaluating both the medical and lay witness evidence in the record, as well as in assessing plaintiff's residual functional capacity, it also is not at all clear that the hypothetical question the ALJ posed was accurate, and therefore that plaintiff would be able to perform the jobs identified.

VI.    This Matter Should Be Remanded for Further Administrative Proceedings

The Court may remand this case "either for additional evidence and findings or to award benefits." Smolen, 80 F.3d at 1292.  Generally, when the Court reverses an ALJ's decision, "the proper course, except in rare circumstances, is to remand to the agency for additional

REPORT AND RECOMMENDATION - 20

investigation or explanation." <u>Benecke v. Barnhart</u>, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted). Thus, it is "the unusual case in which it is clear from the record that the claimant is unable to perform gainful employment in the national economy," that "remand for an immediate award of benefits is appropriate." <u>Id.</u>

Benefits may be awarded where "the record has been fully developed" and "further administrative proceedings would serve no useful purpose." <u>Smolen</u>, 80 F.3d at 1292; <u>Holohan v. Massanari</u>, 246 F.3d 1195, 1210 (9th Cir. 2001). Specifically, benefits should be awarded where:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting [the claimant's] evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

<u>Smolen</u>, 80 F.3d 1273 at 1292; <u>McCartey v. Massanari</u>, 298 F.3d 1072, 1076-77 (9th Cir. 2002). Because issues remain regarding the medical and lay witness evidence in the record, plaintiff's residual functional capacity and her ability to perform other work existing in significant numbers in the national economy, remand of this matter to the Commissioner for further administrative proceedings is appropriate.

Plaintiff argues the medical evidence in the record the ALJ erred in evaluating should be credited as true. Where the ALJ has failed "to provide adequate reasons for rejecting the opinion of a treating or examining physician," that opinion generally is credited "as a matter of law." <u>Lester</u>, 81 F.3d at 834 (citation omitted). However, where the ALJ is not required to find the claimant disabled on crediting of evidence, this constitutes an outstanding issue that must be resolved, and thus the <u>Smolen</u> test will not be found to have been met. <u>Bunnell v. Barnhart</u>, 336 F.3d 1112, 1116 (9th Cir. 2003). Further, "[i]n cases where the vocational expert has failed to

address a claimant's limitations as established by improperly discredited evidence," the Ninth

Circuit "consistently [has] remanded for further proceedings rather than payment of benefits."

Bunnell, 336 F.3d at 1116. Such is the case here.

CONCLUSION

Based on the foregoing discussion, the Court should find the ALJ improperly concluded

plaintiff was not disabled, and should reverse the ALJ's decision and remand this matter to the

Commissioner for further administrative proceedings in accordance with the findings contained

herein.

Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure ("Fed. R. Civ. P.")

72(b), the parties shall have ten (10) days from service of this Report and Recommendation to

file written objections thereto. See also Fed. R. Civ. P. 6. Failure to file objections will result in

a waiver of those objections for purposes of appeal. Thomas v. Arn, 474 U.S. 140 (1985).

Accommodating the time limit imposed by Fed. R. Civ. P. 72(b), the clerk is directed set this

matter for consideration on **April 9, 2010**, as noted in the caption.

DATED this 8th day of March, 2010.


Karen L. Strombom
United States Magistrate Judge

REPORT AND RECOMMENDATION - 22